UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

# * AMENDED * CRIMINAL MINUTES - GENERAL

| Case No. | CR12-879 CAS | | Date | May 20, 2013 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Katie Thibodeaux | Jamie Lang<br>Sheila Nagaraj |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| CORNELIO RODRIGUEZ DOMINGUEZ | | X | X | GEORGINA WAKEFIELD<br>CHRISTOPHER DYBWAD | X<br>X | X<br>X | |

**Proceedings:** MOTION TO DISMISS CASE (Docket #27, filed April 22, 2013)

## I.   INTRODUCTION

Defendant was indicted on September 14, 2012 for one count of Illegal Alien Found in the United States Following Deportation, pursuant to 8 U.S.C. § 1326. The indictment charges that defendant was deported from the United States on December 13, 1996, August 16, 2011, and December 10, 2003.

On April 22, 2013, defendant filed a motion to dismiss the indictment due to procedural defects in the deportations underlying the current charge. The government filed an opposition on April 29, 2013, and defendant replied on May 6, 2013. Defendant's motion is before the Court.

## II.   BACKGROUND

Defendant was born in Mexico and is a Mexican national. Prior to his initial deportation in 1996, however, he had spent substantially all of his life in the United States. Defendant was brought to the United States by his parents in 1975, when he was two years old. After defendant's parents arrived in the United States, they had five additional children, all of whom are United States citizens. Defendant was the oldest male child in his family.

After defendant began attending high school, his father became unable to work due to health problems. Defendant's father's poor health placed financial burdens on defendant's family, so defendant took part time employment. Additionally, while still in high school,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## * AMENDED * CRIMINAL MINUTES - GENERAL

defendant moved into an apartment with his then girlfriend. His girlfriend had two children from another relationship, and defendant supported and cared for these children. Defendant was granted temporary resident status in 1988, and became a lawful permanent resident in 1989.

On December 8, 1993, defendant pled nolo contendere to voluntary manslaughter, in violation of California Penal Code § 192(a), and assault with a deadly weapon, in violation of California Penal Code § 245(a)(1). Additionally, defendant pled nolo contendere to penalty enhancements for participation in a criminal street gang, in violation of California Penal Code § 1866.22(b)(1), and inflicting great bodily injury while committing a felony, in violation of California Penal Code § 12202.7. Defendant received a six year sentence.

At the time of his December 1993 conviction, defendant had other criminal history, including convictions for misdemeanor burglary (California Penal Code § 459), taking a vehicle without the owner's consent (California Vehicle Code § 10851(a)), and disorderly conduct (California Penal Code § 647(f)); drug diversion for possessing a controlled substance (California Health and Safety Code § 11377(a)); and juvenile history involving burglary, automobile related offenses, and receiving stolen property.

On February 1, 1994, the United States Immigration and Naturalization Service ("INS") initiated removal proceedings seeking to deport defendant due to his conviction for voluntary manslaughter.[1] A hearing was conducted before an Immigration Judge ("IJ") on December 13, 1996. At the hearing, the IJ informed defendant that he was charged with being removable because defendant had committed an "aggravated felony," in particular, a crime of violence for which he had been sentenced to five years or more in prison. The IJ stated that defendant was not eligible for a "pardon" because "under the current state of the law, an alien convicted of an aggravated felony is not eligible for a pardon." Def. Ex. M at 5. The IJ then offered the defendant the possibility of an appeal, but defendant declined. Defendant was then deported to Mexico.

Subsequently, defendant reentered the United States, and was deported on August 16, 2001, this time pursuant to an administrative removal order. This basis for removal was defendant's conviction for voluntary manslaughter, and the removal order specifically found that defendant was ineligible for discretionary relief. Govt. Ex. 5. Defendant was again deported on December 9, 2003, pursuant to an order reinstating his August 2001 removal order.

---

[1] The charging documents only seek to remove defendant due to his voluntary manslaughter conviction, not his conviction for assault with a deadly weapon or any aspect of his criminal history.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

### * AMENDED * CRIMINAL MINUTES - GENERAL

Again, the documents memorializing the reinstatement only mention defendant's conviction for voluntary manslaughter. Govt. Ex. 6.

Defendant was found in Los Angeles County on August 1, 2012, which gave rise to these criminal proceedings.

### III. LEGAL STANDARD

When a defendant is prosecuted for illegal reentry pursuant to 8 U.S.C. § 1326, the underlying removal order serves as a predicate element of the offense, and is therefore subject to collateral attack under the due process clause. United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004). Although the doctrine permitting collateral attack on a removal order in the context of an illegal reentry prosecution has constitutional origins, United States v. Mendoza-Lopez, 481 U.S. 828, 837 – 38 (1987), Congress has set forth a three part specifying when a defendant may collaterally attack a prior deportation. 8 U.S.C. § 1326(d). Under this test, to successfully attack an underlying deportation order, a defendant must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." Id.

"An underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004). "To prove prejudice, [defendant] need not show that he actually would have been granted relief; rather, he must show only that he had a 'plausible' basis for seeking relief from deportation." Pallares-Galan, 359 F.3d at 1103.

### IV. ANALYSIS

Defendant asserts two grounds on which to collaterally attack his underlying deportations. First, defendant argues that his conviction for voluntary manslaughter did not render him deportable as an aggravated felon. Second, defendant argues that even if he were deportable as an aggravated felon, he was eligible for, and plausibly could have received, discretionary relief from deportation pursuant to Section 212(c) of the Immigration and Nationality Act ("INA"), which applied to him at the time of his 1996 deportation. The Court considers each argument in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**\* AMENDED \* CRIMINAL MINUTES - GENERAL**

**A.      Whether Defendant was Lawfully Deported as an Aggravated Felon**

As mentioned above, defendant was deported on the grounds that he had committed a "crime of violence," as defined in 18 U.S.C. § 16, which rendered him deportable as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony"). The crime of violence underlying all of defendant's deportations was defendant's 1993 conviction, pursuant to a plea of nolo contendere, to voluntary manslaughter in violation of California Penal Code § 192(a). Defendant now argues that his voluntary manslaughter conviction cannot be construed as a crime of violence under 18 U.S.C. § 16, which, if correct, would undermine the basis of his prior deportations.

The two step approach laid out in Taylor v. United States, 495 U.S. 575 (1990), controls the inquiry of whether a conviction counts as an aggravated felony. Penuliar v. Mukasey, 528 F.3d 603, 608 (9th Cir. 2008). In the first step of this analysis, the Court "look[s] to the statute under which the person was convicted and compare[s] its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43)." Id. This first step is called the "categorical approach." If the conduct that would not constitute an aggravated felony comes within the scope of the statute of conviction, courts proceed to the second step, called the "modified categorical approach." Id. "Under this approach, we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime. We do not, however, look to the particular facts underlying the conviction." Id.

Accordingly, the Court first employs the categorical approach. The Ninth Circuit, in an unpublished disposition, has addressed the issue of whether voluntary manslaughter under California Penal Code § 192(a) is categorically a crime of violence, and found that it is not. Purohit v. Holder, 441 Fed. Appx. 458, 460 (9th Cir. 2011). The Ninth Circuit's decision rested on the observation that a crime of violence requires the intentional use of force, and a defendant can violate § 192(a) through the reckless use of force. Id. (citing People v. Rios, 23 Cal.4th 450 (2000); People v. Lasko, 23 Cal.4th 101(2000)). While the result in Purohit is non-binding, the Court finds the reasoning persuasive, and also concludes that voluntary manslaughter pursuant to § 192(a) is not categorically a crime of violence.[2]

---

[2] The government argues that the Court should not rely upon the reasoning in Purohit, because the rule that a crime of violence requires the intentional use of force stems from the Supreme Court's decision in Leocal v. Ashcroft, 543 U.S. 1 (2004), which had not been decided at the time of defendant's removal. The government explains that for purposes of collateral attack, the Court can only look to the law as it stood at the time of the IJ's decision to deport

The Court therefore proceeds to the second step, the modified categorical approach. Where a defendant has pled nolo contendere, courts in the Ninth Circuit determine whether defendant was convicted of a crime of violence by considering charging documents, written plea agreements, the transcript of the defendant's plea colloquy, and any explicit factual findings to which the defendant has assented. United States v. Vidal, 504 F.3d 1072, 1086 (9th Cir. 2007). In particular, where a defendant pleads guilty but does not admit to a factual basis for the plea, pursuant to the California Supreme Court's decision in People v. West, 3 Cal.3d 595 (1970), a guilty plea can only establish a factual predicate satisfying the definition of "crime of violence" if the defendant explicitly admitted to facts constituting a crime of violence. Id. at 1087 ("As a result, unless the record of the plea proceeding reflects that the defendant admitted to facts, a West plea, without more, does not establish the requisite factual predicate to support a sentence enhancement."). Otherwise, because a plea pursuant to People v. West does not establish factual guilt, there is no basis on which to conclude that the defendant was convicted of a crime of violence.

Here, defendant pled guilty to voluntary manslaughter pursuant to People v. West, and therefore the Court can only find that his crime was a crime of violence if he assented to facts demonstrating that he commit such a crime. The Court finds that defendant has made no such factual admission. The only cognizable evidence the government points to as a possible basis for finding that defendant made such an admission is the transcript of defendant's plea colloquy, which contained the following exchange:

> Court: Counsel, will you stipulate the Court [sic] may read and consider the pre-plea probation report as well as the preliminary hearing transcript in this matter for the purpose of determining the existence of a factual basis?
>
> [Defendant's counsel]: I will stipulate there is a factual basis.

Def. Ex. P at 6 – 7. The government argues that this exchange constitutes an admission to the facts contained in the pre-plea probation report and the preliminary hearing transcript. The Court rejects this interpretation, however, because defendant's counsel did not state that he

---

defendant in 1996. See United States v. Vidal-Mendoza, 705 F.3d 1012, 1017 (9th Cir. 2013) ("[A]n IJ need not anticipate future changes in law when determining an alien's apparent eligibility for relief from removal."). The Court rejects this argument, however, because Leocal involved a question of statutory construction, and is therefore fully retroactive. United States v. Rivera-Nevarez, 418 F.3d 1104, 1107 (10th Cir. 2005); United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006).

stipulated to the facts set out in the documents referred to by the Court, but merely stipulated that some factual basis existed. In the context of a plea pursuant to People v. West, which does not establish factual guilt, this statement cannot be construed as assent to particular facts alleged, as defendant was under no obligation to make such a factual admission. Vidal, 504 F.3d at 1089 ("The California Supreme Court subsequently characterized a People v. West plea as a plea of nolo contendere that does not establish factual guilt."). Additionally, in the forms setting out defendant's plea of no contest, while the text "preliminary hearing transcript" is written next to a box marked "factual basis," that box is not marked, further suggesting defendant's lack of assent to a factual basis set out in that transcript. This section of the plea colloquy therefore cannot establish any particular factual predicate for defendant's guilty plea, which leads to the conclusion that defendant's conviction for voluntary manslaughter was not a crime of violence under the modified categorical approach.

Accordingly, defendant was not deportable as an aggravated felon due to his conviction for voluntary manslaughter, which is sufficient to collaterally attack an underlying deportation under § 1326(d). United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006). The government's final argument made in opposition to this conclusion is that even though defendant may not have been deportable as an aggravated felon due to his voluntary manslaughter conviction, he cannot demonstrate prejudice because he was nonetheless deportable as an aggravated felon because he was also convicted of assault with a deadly weapon. In contrast to voluntary manslaughter, assault with a deadly weapon is an aggravated felony. Ortiz-Magana v. Mukasey, 542 F.3d 653, 659 (9th Cir. 2008). The government therefore concludes that defendant cannot demonstrate prejudice – and hence cannot show that the removal order was fundamentally unfair – because even if was not properly deportable due to his voluntary manslaughter conviction, he could have been lawfully deported on other grounds.

The Ninth Circuit has squarely rejected the argument that an alien can be lawfully removed based on aggravated felonies not referenced in the charging documents underlying a removal. Briseno v. I.N.S., 192 F.3d 1320, 1322 – 1323 (9th Cir. 1999) ("[W]e do not read 'deportable by reason of having committed' an aggravated felony * * * as referring to felonies not charged at all in the Order to Show Cause."); Chowdurhy v. I.N.S., 249 F.3d 970, 975 (9th Cir. 2001). In other words, an alien can only be lawfully deported as an aggravated felon if the predicate felony is alleged in the documents underlying the removal proceeding. Here, since all of defendant's removals relied on his conviction for voluntary manslaughter – not his conviction for assault with a deadly weapon – the Court rejects the government's argument.

The government relies on United States v. Gonzalez-Valerio, 342 F.3d 1051, 1055 (9th Cir. 2003), for the conclusion that aggravated felonies that do not form the basis for removal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## * AMENDED * CRIMINAL MINUTES - GENERAL

order can nonetheless be considered as a basis for upholding a removal order, either on appeal or on collateral attack. Gonzalez-Valerio, however, considered an issue that is narrowly but importantly distinct from the issue before this Court. In Gonzalez-Valerio, the question was whether the court could consider aggravated felonies not referenced in the defendant's underlying removal proceedings when determining the plausibility of a defendant's claim for relief pursuant to § 212(c). Id. at 1055 – 56. The Ninth Circuit answered that question in the affirmative, which undermined the defendant's claim for relief in Gonzalez-Valerio, because under the law governing the defendant's underlying immigration proceeding, a conviction for an aggravated felony was an absolute bar to § 212(c) relief. Id. By contrast, in the instant case, the issue is not whether defendant's conviction for an aggravated felony rendered him ineligible for discretionary relief pursuant to § 212(c). Instead, the issue is whether defendant was eligible for deportation as an aggravated felon based on the convictions referenced in his underlying removal proceedings. In this procedural context, where the issue is eligibility for deportation, not eligibility for discretionary relief, Ninth Circuit law does not allow courts to consider convictions not alleged in the underlying removal proceedings. Camacho-Lopez, 450 F.3d at 930 n.1; Chowdurhy, 249 F.3d at 975.

Accordingly, the Court finds that defendant has successfully collaterally attacked his prior deportations on the grounds that he was not lawfully deportable as an aggravated felon due to his conviction for voluntary manslaughter, and therefore concludes that the indictment should be dismissed. Camacho-Lopez, 450 F.3d at 930 ("[T]o succeed in his attack, [defendant] must demonstrate that he was prejudiced and that, therefore, the removal order was fundamentally unfair. * * * [Defendant's] Notice to Appear charged him as removable only for having committed an aggravated felony; as discussed above, [defendant] prior conviction did not fit that definition. Thus, [defendant] was removed when he should not have been and clearly suffered prejudice.").

### B.     Whether Defendant Could Have Plausibly Obtained Section 212(c) Relief

The Court also addresses defendant's argument that his underlying deportations were unlawful because he was not advised of the possibility that he could obtain discretionary relief pursuant to section 212(c) of the INA.[3]  Section 212(c), which was applicable to defendant at the time of his December 1996 deportation, allowed an immigration judge to waive deportation for a lawful permanent resident who had been in the United States lawfully for at least seven years, even if the lawful permanent resident had commit an aggravated felony.  See United

---

[3] Although the Court has already found grounds for dismissing the indictment, the Court addresses defendant's alternative argument for the sake of completeness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## * AMENDED * CRIMINAL MINUTES - GENERAL

States v. Ubaldo-Figueroa, 364 F.3d 1042, 1044 (9th Cir. 2004); Ortega de Robles v. I.N.S., 58 F.3d 1355, 1358 (9th Cir. 1995). Relief under section 212(c) was discretionary, and to determine whether to grant section 212(c) relief, an IJ based the decision "on all the facts and circumstances of a particular case, taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." Yepes-Prado v. I.N.S., 10 F.3d 1363, 1365 – 66 (9th Cir. 1993). Additionally, there were several positive and negative factors an IJ weighed as part of this determination:

> Favorable considerations include: 1) family ties within the United States; 2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character. * * * To be weighed against these factors are 1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident. * * * Where a 212(c) petitioner has committed a particularly grave criminal offense, he must make a heightened showing that his case presents unusual or outstanding equities to warrant discretionary relief.

Id. at 1366.

The government and defendant agree that, contrary to statements made by the IJ during defendant's deportation hearing, at the time of defendant's December 1996 deportation, he was eligible for section 212(c) relief. Moreover, the government and defendant also agree that due to the IJ's misstatements, defendant's due process rights were violated, which excuses defendant's failure to exhaust administrative remedies and shows that he was deprived of judicial review. United States v. Leon-Paz, 340 F.3d 1003, 1005 (9th Cir. 2003); 8 U.S.C. § 1326(d). Accordingly, the only disputed issue is whether defendant has demonstrated prejudice. Id. As mentioned above, in order to demonstrate prejudice, defendant must demonstrate "plausible" grounds that could have caused an IJ to exercise discretion in his favor; it does not suffice to show that relief was merely "possible." United States v. Bajaras-Alvarado, 655 F.3d 1077, 1089 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## * AMENDED * CRIMINAL MINUTES - GENERAL

Defendant argues that he had plausible grounds for relief due to the duration of his residence, his strong family ties to the United States, his history of employment, and his rehabilitation following his 2003 convictions. Defendant points to the fact that he entered the United States when he was just two years old, and provided financial and emotional support to his own family and his girlfriend's family prior to his conviction. Defendant asserts that these two families faced hardship after he was deported. Additionally, defendant points out that he worked several part time jobs to support these two families, even while he was attending high school and community college. Finally, defendant claims that he achieved significant rehabilitation while in custody, shown most clearly by the work he did with dying prisoners in the medical ward at California Men's Colony, including prisoners suffering from HIV/AIDS.

While these facts do show the presence of positive equities, they are outweighed by defendant's substantial criminal history, which included convictions for voluntary manslaughter, assault with a deadly weapon, burglary, and vehicle offenses. Defendant's positive equities are not "outstanding," and do not rise to the level necessary to overcome his criminal history and show that relief would have been plausible. Chen v. I.N.S., 87 F.3d 5, 8 (1st Cir. 1996) ("Petitioner had a decade of lawful permanent residence, family ties in this country, part-ownership in a house, some involvement with community service, and a chiaroscuro record of gainful employment. At bottom, however, these are garden-variety equities; they simply do not rise to a level that would warrant the appellation 'unusual' or 'outstanding.'").[4] The Court therefore concludes that defendant cannot collaterally attack his underlying deportations based on the failure of the IJ to inform him of the possibility that he would be granted relief under section 212(c).

## V. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS defendant's motion to dismiss the indictment.

IT IS SO ORDERED.

|  | 00 | : | 10 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

---

[4] Additionally, defendant's case is distinct from several of the cases upon which he relies because, among other reasons, he did not have and support children who were United States citizens. See Arietta, 224 F.3d at 1079 – 80; Ubaldo-Figueroa, 364 F.3d at 1051; United States v. Lopez-Hernandez, 2007 WL 608111, at *13 (N.D. Cal. 2007).