UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 12-879 CAS | | | | Date | July 18, 2013 |
|---|---|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | | | |
| Interpreter | N/A | | | | | |

| Catherine Jeang | Laura Elias | Jamie Lang |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| CORNELIO RODRIGUEZ DOMINGUEZ (WAIVER OF APPEARANCE FILED 07/17/2013) | NOT | | | GEORGINA WAKEFIELD, DFPD | X | X | |
| | | | | CHRISTOPHER DYBWAD, DFPD | X | X | |

**Proceedings:** MOTION FOR RECONSIDERATION RE JUDGMENT OF DISCHARGE (Docket #33, filed June 16, 2013)

MOTION TO STRIKE GOVERNMENT'S MOTION FOR RECONSIDERATION (Docket #34, filed June 17, 2013)

## I.   INTRODUCTION

Defendant was indicted on September 14, 2012 for one count of Illegal Alien Found in the United States Following Deportation, in violation of 8 U.S.C. § 1326.  The indictment charges that defendant was deported from the United States on December 13, 1996, December 10, 2003, and August 16, 2011.

On April 22, 2013, defendant filed a motion to dismiss the indictment due to procedural defects in the deportation proceedings underlying the current charge.  In an order dated May 20, 2013, the Court granted defendant's motion.  On June 16, 2013, the government filed a motion requesting reconsideration of the Court's order dismissing the indictment.  Defendant filed an opposition on July 1, 2013, and the government filed a reply on July 8, 2013.

Additionally, on June 17, 2013, defendant filed a motion to strike the government's motion for reconsideration.  The government filed an opposition on July 1, 2013, and defendant replied on July 8, 2013.  After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

## II. BACKGROUND

In his motion to dismiss the indictment, defendant argued that he could not be prosecuted for illegal reentry following deportation because his prior deportation proceedings did not comport with due process. Defendant was deported on the grounds that he had committed a "crime of violence," as defined in 18 U.S.C. § 16, which rendered him deportable as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See 8 U.S.C. § 1101(a)(43)(F) (defining having committed an "aggravated felony"). The immigration judge presiding over defendant's deportation concluded that defendant had committed a crime of violence because defendant had pled guilty, pursuant to a plea of *nolo contendere*, to voluntary manslaughter in violation of California Penal Code § 192(a). Defendant argued that this conclusion was erroneous, and that his conviction for voluntary manslaughter was not a conviction for a crime of violence.

The Court agreed with defendant's argument. To determine whether defendant was convicted of a "crime of violence," the Court employed the two-step analysis articulated in Taylor v. United States, 495 U.S. 575 (1990), under which courts first apply a "categorical approach" and then a "modified categorical approach" to determine whether an offense meets the definition of a crime of violence. See Fernandez-Ruiz v. Gonzalez, 466 F.3d 1121, 1125 (9th Cir. 2006). The Court concluded that under both the categorical approach and the modified categorical approach, defendant's conviction did not meet the definition of a crime of violence. The Court concluded that defendant was not lawfully deported as having committed an aggravated felony, and therefore that the indictment should be dismissed.

The government seeks reconsideration of this order, on the grounds that voluntary manslaughter, under California Penal Code § 192(a), should be classified as a crime of violence under the categorical approach.

## III. ANALYSIS

The phrase "crime of violence" is defined in 18 U.S.C. § 16 as follows:

The term "crime of violence" means--
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), the Supreme Court interpreted this statute to exclude crimes that requires only a showing of negligence. 543 U.S. at 9 – 11. The Supreme Court reached this conclusion by focusing on the language "use . . . of physical force against the person or property of another." <u>Id.</u> at 9. The Court construed this language to suggest "a higher degree of intent than negligence or merely accidental conduct," because the term "use" requires "active employment." <u>Id.</u> ("Thus, a person would 'use . . . physical force against' another when pushing him; however, we would not ordinarily say a person 'uses . . . physical force against' another by stumbling and falling into him.").

The Supreme Court in <u>Leocal</u> explicitly stated that its holding left open the question whether an offense committed through the reckless use of force could qualify as a crime of violence. <u>Leocal</u>, 543 U.S. at 13. The Ninth Circuit has, however, extended the holding of <u>Leocal</u>, and concluded that crimes involving the reckless use of force are not crimes of violence. <u>Fernandez-Ruiz</u>, 466 F.3d at 1130 ("[N]either recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16."). The Ninth Circuit reached this holding by reasoning that if a crime can be committed without an intentional use of force, but merely with a conscious disregard of a substantial and unjustified risk of injury, the employment of force is not "instrumental to carrying out the crime, such as the plain meaning of the word 'use' denotes." <u>Id.</u> The Ninth Circuit further clarified that under <u>Leocal</u>, "to constitute a federal crime of violence an offense must involve the *intentional* use of force against the person or property of another." <u>Id.</u> at 1132 (emphasis added).

The principle that a crime of violence can only be committed through the intentional use of force has important consequences when analyzing a criminal statute under the "categorical approach." Under the categorical approach, a conviction under a criminal statute qualifies as a crime of violence "if and only if the full range of conduct covered by the criminal statute falls within the meaning of that term." <u>Penuliar v. Mukasey</u>, 528 F.3d 603, 608 (9th Cir. 2008) (quoting <u>Chang v. I.N.S.</u>, 307 F.3d 1185, 1189 (9th Cir. 2002)). Therefore, if a statute can be violated through a merely reckless use of force, a conviction under that statute is not a crime of violence pursuant to the categorical approach. Applying this principle, courts have concluded that a wide range of criminal statutes that can be violated through reckless conduct are not crimes of violence under the categorical approach. <u>Oyebanji v. Gonzales</u>, 418 F.3d 260, 264 (3d. Cir. 2005) (vehicular manslaughter); <u>Covarrubias Teposte v. Holder</u>, 632 F.3d 1049, 1055 (9th Cir. 2010) (shooting at an inhabited building); <u>Fernandez-Ruiz</u>, 466 F.3d at 1132 (domestic violence); <u>United States v. Palomino Garcia</u>, 606 F.3d 1317, 1336 (11th Cir. 2010) (aggravated assault).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

 Accordingly, to resolve the question on which the government seeks reconsideration, the Court must examine "the full range of conduct" prohibited by California Penal Code § 192(a). If that statute can be violated through the reckless use of force, defendant's conviction for voluntary manslaughter is not a crime of violence under the categorical approach. California Penal Code § 192 provides the following:

> Manslaughter is the unlawful killing of a human being without malice.[1] It is of three kinds:
>
>  (a) Voluntary--upon a sudden quarrel or heat of passion.
>
>  (b) Involuntary--in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.
>
>  (c) Vehicular--
>
>   (1) Except as provided in subdivision (a) of Section 191.5, driving a vehicle in the commission of an unlawful act, not amounting to felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

---

[1] The term "malice" is defined in California Penal Code § 188 as follows:

> Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.
>
> When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought. Neither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice.

>   (2) Driving a vehicle in the commission of an unlawful act, not amounting to felony, but without gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.
>
>   (3) Driving a vehicle in connection with a violation of paragraph (3) of subdivision (a) of Section 550, where the vehicular collision or vehicular accident was knowingly caused for financial gain and proximately resulted in the death of any person. This provision shall not be construed to prevent prosecution of a defendant for the crime of murder.

Cal. Pen. Code § 192.  The definition of voluntary manslaughter in this statute is sparse, but California courts have explained the elements of the offense in more depth.  In general, to commit voluntary manslaughter, a defendant must kill another human being either with an intent to kill or "conscious disregard for life."  People v. Bryant, 56 Cal. 4th 959, 969 (2013); People v. Lasko, 23 Cal. 4th 101, 109 – 110 (2000); People v. Rios, 23 Cal. 4th 450, 460 (2000).  Since an intentional or reckless killing is required, but the requirement of malice is not required, voluntary manslaughter has been characterized as a lesser included offense in the crime of murder.  Rios, 23 Cal. 4th at 463; Cal. Pen. Code § 187(a) ("Murder is the unlawful killing of a human being, or a fetus, with malice aforethought.").  This characterization is apt because, in essence, to demonstrate voluntary manslaughter a prosecutor must prove the elements of murder with the exception of malice.  Id.

When a defendant has committed a homicide with either intent to kill or conscious disregard for life, and the prosecution seeks a conviction for a lesser offense of voluntary manslaughter rather than murder, absence of malice can be demonstrated by showing that the killing occurred either in unreasonable self-defense or upon provocation through a sudden quarrel or heat of passion.  See, e.g., Bryant, 56 Cal. 4th at 969 – 970.  Nonetheless, provocation or imperfect self-defense are not elements of the crime of voluntary manslaughter.  Rios, 23 Cal. 4th at 462 – 463.  These are merely methods of demonstrating the absence of malice, and while malice is not an element of the crime of voluntary manslaughter, neither is the absence of malice.  Id.  Therefore, "[t]he possibility that the defendant killed with malice, and thus committed the greater offense of murder, does not prevent a conviction of voluntary manslaughter, a lesser included offense which does not require proof of malice."  Id. at 463.

Accordingly, in order to commit the offense of voluntary manslaughter, there is no requirement that a defendant must employ the intentional use of force.  Instead, it is sufficient for the defendant to kill another human being while acting only with "conscious disregard for

life." Voluntary manslaughter therefore cannot be considered a crime of violence under the categorical approach.  See Purohit v. Holder, 441 Fed. Appx. 458, 460 (9th Cir. 2011) ("[U]nder our recent cases, such as Covarrubias Teposte v. Holder, 632 F.3d 1049, 1052–55 (9th Cir.2011), which applied the 'intentional force' requirement established by Fernandez–Ruiz, 466 F.3d at 1132, we hold that California Penal Code § 192(a) is not categorically a crime of violence because it can be committed through the reckless use of force * * *.").

This conclusion is buttressed by the California Supreme Court's decision in People v. Watson, 30 Cal. 3d 290 (1981).  There, the court held that a defendant who killed two people while driving under the influence of alcohol could be prosecuted for murder, reasoning that the prosecution could demonstrate the existence of malice through evidence showing that the defendant drove in an unsafe manner after willfully consumed alcohol with knowledge that he would later drive his car.  Id. at 300 – 301.  For purposes of the instant case, Watson is significant because it demonstrates that, under California law, a defendant can commit murder, and therefore also the lesser included offense of voluntary manslaughter, by killing another person while recklessly driving an automobile.[2]  This proposition of law is significant because, as several courts have recognized, recklessly killing another human being while driving is not a crime of violence.  Oyebanji, 418 F.3d at 264 (offense of vehicular manslaughter under statute requiring only recklessness was not a crime of violence under the categorical approach); Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 447 (4th Cir. 2005) (similar); United States v.

---

[2] In Watson, the defendant argued that in light of the specific provisions prohibiting vehicular manslaughter, he could not be prosecuted under the general murder statute for killing a human being while driving a vehicle.  The court rejected that argument, reasoning that the general murder statute requires a *mens rea* of malice, whereas the vehicular manslaughter statute only requires a showing of gross negligence, and the California Legislature did not intend to preclude prosecution for murder when a vehicular homicide was committed with a *mens rea* more culpable than gross negligence.  Watson, 30 Cal. 3d at 295 – 296, 298.  This reasoning also demonstrates that a vehicular homicide can be prosecuted under the voluntary manslaughter provisions even though even though there are more specific vehicular homicide statutes.  Voluntary manslaughter—like murder—requires a *mens rea* more culpable than gross negligence.  Moreover, although the statutory text of California Penal Code § 192 specifically states that the involuntary manslaughter provisions do not apply to acts committed while driving a vehicle, no comparable limitation is set out regarding voluntary manslaughter, which further suggests that the voluntary manslaughter provisions apply to reckless homicides committed while the defendant is driving.  Compare Cal. Pen. Code § 192(a) with Cal. Pen. Code § 192(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Portela, 469 F.3d 496, 499 (6th Cir. 2006) ("Portela's conviction for reckless vehicular assault is not a 'crime of violence . . .'"). Therefore, because reckless vehicular homicide comes within the scope of California's voluntary manslaughter statute, the statute covers conduct that does not involve the intentional use of force, which demonstrates that the offense of voluntary manslaughter is not a crime of violence under the categorical approach.

The government's grounds for reaching a contrary conclusion are not persuasive. The government relies heavily on the definition of "conscious disregard for life" in California Criminal Jury Instruction 8.40, which defines voluntary manslaughter. This instruction provides:

> The phrase, "conscious disregard for life," as used in this instruction, *means that a killing results from the doing of an intentional act*, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his or her conduct endangers the life of another and who acts with conscious disregard for life.

CALJIC 8.40 (Voluntary Manslaughter—Defined) (emphasis added). According to the government, this instruction makes it clear that a defendant must have engaged in some intentional act in order to be convicted of voluntary manslaughter. Since an intentional act is required in order to convict a defendant of voluntary manslaughter, the government concludes that voluntary manslaughter is a crime of violence under the categorical approach.

This argument rests on an unduly broad interpretation of the Ninth Circuit's holding in Fernandez-Ruiz. There, the Ninth Circuit held that a crime of violence must involve the intentional use of force, not merely some intentional act. Fernandez-Ruiz, 466 F.3d at 1132. Additionally, the government's argument is inconsistent with Ninth Circuit case law holding that crimes requiring both intentional conduct and the use of force need not be characterized as crimes of violence. Covarrubias Teposte, 632 F.3d at 1055. In Covarrubias Teposte, the Ninth Circuit concluded that shooting at an inhabited dwelling, in violation of California Penal Code § 246, was not a crime of violence under the categorical approach. In reaching this conclusion, the Ninth Circuit acknowledged that the California statute required the intentional discharge of a gun. Id. at 1054 ("Given the elements of that statute set by California judicial decisions, we can gather with certainty only that Covarrubias intentionally discharged a gun with reckless disregard as to whether the bullet would hit an inhabited vehicle or dwelling."). The requirement of intentional conduct and a reckless act of violence was not enough to support the conclusion that the offense was a crime of violence under the categorical approach, however, because the California statute "proscribes shooting *either* directly at *or* in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

probability that one or more bullets will strike the target or the persons around it." Id. at 1054 (quoting People v. Overman, 126 Cal. App. 4th 1344, 1356 (2005)) (emphasis in original). Because the statute could be violated by a defendant who acts in reckless disregard of the possibility of shots hitting a dwelling, the Ninth Circuit concluded that the offense of shooting at an inhabited dwelling was not a crime of violence. Id.

Accordingly, the Court concludes that under the categorical approach, voluntary manslaughter as defined in California Penal Code § 192(a) is not a crime of violence. The Court therefore declines to alter its prior order.[3]

## IV.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES the government's motion for reconsideration, and DENIES the defendant's motion to strike the motion for reconsideration.

IT IS SO ORDERED.

|  | 00 | : | 06 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |

---

[3] Additionally, the Court denies the defendant's motion to strike the government's motion for reconsideration. As the government points out, a district court has discretion to reconsider its prior orders when they are inconsistent with the law. United States v. Dieter, 429 U.S. 6, 8 (1976) (taking note of "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors. . .").